UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**GERALD PAYNE,**

    Petitioner,

-vs-                                                  Case No. 8:05-CV-259-T-27MSS
                                                          Crim. Case No. 8:99-CR-78-T-27MSS

**UNITED STATES OF AMERICA,**

    Respondent.
_____/

## ORDER

**BEFORE THE COURT** are Petitioner's Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (hereinafter "amended motion") (CV Dkt. 2), the Government's Response (CV Dkt. 5), and Petitioner's Reply (CV Dkt. 9). After consideration and a review of the record, this Court finds that the amended motion should be **DENIED**.

### Background

On March 10, 1999, a grand jury returned a 20-count indictment charging Petitioner, GERALD PAYNE (hereinafter "Petitioner" or "Payne"), and five others who were principals in Greater Ministries International Church, with having engaged in a fraudulent investment scheme that took in more than $400 million between 1996 and 1999 (CR Dkt. 3). After a jury trial, Petitioner was convicted of mail fraud conspiracy, money laundering conspiracy, mail fraud, money laundering, conducting unlawful monetary transactions, and unlawfully structuring financial transactions[1] (CR Dkt. 433). Petitioner was sentenced to a total of 324 months in prison (CR Dkt. 551). Petitioner's convictions and sentences were affirmed on appeal (CR Dkt. 1028). *See Payne v. United States,* Case No. 01-14746 (11th Cir. 2003).

---

[1] The jury found Petitioner guilty on all counts except Count Five.

## Discussion

In his motion, Petitioner raises six grounds of ineffective assistance of counsel. Counsel is presumed to be competent to assist a defendant. *United States v. Cronic*, 466 U.S. 648 (1984). The burden, therefore, is on the accused to show that counsel was ineffective. *Id.* In order to do so, Petitioner must prove that his counsel was deficient, which requires a showing that counsel's performance was unreasonable under current professional norms. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Petitioner must also prove that the deficiency prejudiced the defense, which requires a showing that there is a reasonable probability that but for counsel's errors, the resulting conviction or sentencing would have been different. *Id.* at 694.

**Ground One**

In Ground One, Petitioner contends that his trial counsel rendered ineffective assistance when he advised Petitioner that Petitioner should not testify at trial. According to Petitioner, after the Court denied his motion in limine and authorized his 1979 conviction for making a false statement to a grand jury to be used as impeachment if he testified, his attorney advised him that: 1) he should not testify at trial; 2) that the Court's ruling on the motion in limine was contrary to clearly established law; and 3) even if he did not testify at trial, his argument that his right to testify at trial was chilled by the Court's ruling on the motion in limine would be preserved for appellate review. Petitioner asserts that based on his counsel's advice, he decided not to testify at trial. He argues that his attorney's advice was "erroneous" and therefore his decision not to testify at trial was not "knowingly, voluntarily, and intelligently" made. Petitioner's contention is without merit.

A defendant's right to testify at a criminal trial is a fundamental and personal right which cannot be waived by defense counsel. *See United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir.

1992) (en banc), *cert. denied*, 113 S. Ct. 127 (1992). In *Teague,* the Eleventh Circuit held that it is defense counsel's responsibility to advise the defendant of this right and the strategic implications and "that the appropriate vehicle for claims that the defendant's right to testify was violated by defense counsel is a claim of ineffective assistance [under *Strickland*]." *Id.* at 1534. *Teague* reasoned that an attorney's performance would be deficient under the first prong of the *Strickland* test if counsel refused to accept the defendant's decision to testify and would not call him to the stand or, alternatively, if defense counsel never informed the defendant of the right to testify and that the ultimate decision belonged to the defendant. *Id.* In *Teague*, the defendant's ineffective assistance of counsel claim was rejected because the trial court found that counsel had advised the defendant of his right to testify, had advised him that he should not exercise that right and the defendant did not protest. *Teague,* 931 F.2d at 1535.

An evidentiary hearing on this issue is unnecessary. It is apparent from Petitioner's allegations that he was well aware of his right to testify, that he and his attorney discussed it, that his attorney advised Petitioner not to testify based on the Court's ruling on his motion in limine, and that Petitioner agreed with his attorney's recommendation. Moreover, during trial, the Court conducted a colloquy with Petitioner concerning his right to testify and Petitioner acknowledged that it was his decision not to testify (CR Dkt. 733 at 12-14). He also advised the Court that he decided not to testify because he believed that he might jeopardize the other defendants (Id. at 13). His decision not to testify was therefore not based solely on his counsel's advice.[2] Counsel's performance was not constitutionally deficient.

---

[2] Because Petitioner fails to show his counsel's performance was deficient, the Court does not need to address the prejudice component of the *Strickland* test. "[W]hen applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds." *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998); *see also Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."). In any event, in light of the substantial evidence against him, Petitioner's proposed testimony (*see* Dkt. 9 at 3-4) would not have refuted the overwhelming evidence of his guilt. (*See* CR Dkt. 483).

Moreover, "[a] decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be 'so ill chosen that it permeates the entire trial with obvious unfairness.'" *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995). "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

To the extent Petitioner contends that his attorney's advice was unreasonable, Petitioner's contention is likewise without merit. Petitioner explains that his attorney's advice not to testify was based on this Court's decision to permit his impeachment with the 1979 conviction for making a false statement to a grand jury. That advice was based on arguably sound tactical reasons. Petitioner fails to establish that under these circumstances no reasonable lawyer would have advised Petitioner not to testify at trial. *See United States v. Teague*, 953 F.2d at 1533 n. 9 ("There are good tactical reasons why it may not be best for the defendant to testify in some circumstances. Some examples might be if the defendant might provide evidence of missing elements of the crime on cross-examination, *if the defendant might be prejudiced by revelation of prior convictions*, or if the prosecutor might impeach the defendant using a prior inconsistent statement.")(emphasis added).

**Ground Two**

In Ground Two, Petitioner contends that his attorney was ineffective for failing to object to the manner in which the Court calculated his sentence as to Count Two, which alleged a money laundering conspiracy under 18 U.S.C. § 1956(a)(1)(A)(i) and 18 U.S.C. § 1957. Count Two alleged that the objects of the money laundering conspiracy were mail fraud and money laundering. Petitioner complains that the jury did not specify which object of the conspiracy it found in reaching

its verdict and that counsel was ineffective in not objecting to that and the Court's application of the sentencing guidelines as to Count Two. Petitioner's contentions are without merit. Moreover, Petitioner cannot show any prejudice as a result of the jury not identifying which offense was the object of the conspiracy since it had no effect on his sentence.

In determining the applicable sentencing guideline range, the Court grouped the offenses of conviction pursuant to USSG § 3D1.2, since the offense level of the crimes of conviction all were to be determined "largely on the basis of the total amount of harm or loss" and none were excluded from the purview of that provision. *See* USSG § 3D1.2(d). Using that provision, since the offenses of conviction involved "offenses of the same general type," the guideline calculation began with the "offense guideline that produce[d] the highest offense level." USSG § 3D1.3(b). That was an offense level 23, which this Court used as its starting point because the defendants had been convicted of the crime of money laundering [18 U.S.C. § 1956(a)(1)(A)(I)] in Counts Eight through Twelve. *See* USSG § 2S1.1(a)(1). As the calculations began at level 23, any question as to which offense, or both for that matter, the jury found to have been the object of the money laundering conspiracy charged in Count Two made no difference whatsoever. Regardless of which object of the conspiracy the jury found in reaching its verdict, the calculation of Petitioner's guideline sentence range as to Count Two started at base offense level 23. Because Petitioner cannot show prejudice, he fails to establish an ineffective assistance of counsel claim under *Strickland*.

**Ground Three**

In Ground Three, Petitioner claims that his attorney was ineffective for failing to object to the Court's sentence of 324 months, contending that it exceeded the statutory maximum, twenty years. Petitioner argues that his attorney was ineffective in not objecting to the Court not grouping

the offenses of conviction "in order to give Mr. Payne a higher sentence." Petitioner's contentions are without merit.

Initially, the Court did group the counts pursuant to USSG § 3D1.2(d). Accordingly Petitioner fails to show his counsel was ineffective for failing to object to the Court's "refusal to group the counts in order to give him a higher sentence." (*See* CR Dkt. 872 at 48; Presentence Investigation Report at 18). The essence of Petitioner's claim is that counsel should have objected to the 324 month sentence as being in excess of the twenty year statutory maximum for Counts 2, 8, 9, 10, 11 ans 12. Petitioner's contention is likewise without merit. The 324 month sentence was a result of consecutive terms of imprisonment as to certain counts and no sentence as to any particular count exceeded the statutory maximum.

Petitioner's sentencing guideline range was calculated based on a final adjusted offense level of 41 and a Criminal History Category I (CR Dkt. 551). The resulting sentencing guideline range of imprisonment was 324-405 months. Petitioner was sentenced to a total of 324 months in prison: 60 months as to Counts 1, 3, 4, 6, 7, 18, 19, and 20, concurrent; 240 months as to Counts 2, 8, 9, 10, 11, and 12, concurrent; and 84 months as to Counts 13, 14, 15, 16, and 17, concurrent with the other counts, but *consecutive* to Counts 2, 8, 9, 10, 11, and 12 (CR Dkt. 551).

U.S.S.G. § 5G1.2(d) provides: "[i]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law."

The sentence imposed (240 months) as to the counts carrying the highest statutory maximum, Counts 2, 8, 9, 10, 11, and 12 (money laundering and conspiracy to commit money laundering),[3] was less than the total punishment range of 324 to 405 months. The imposition of consecutive sentences under U.S.S.G. § 5G1.2(d) was therefore mandatory. *United States v. Davis*, 329 F.3d 1250, 1254 (11th Cir. 2003), *cert. denied* 540 U.S. 925 (2003). Accordingly, pursuant to U.S.S.G. § 5G1.2(d), the Court ordered the 84 month sentence on Counts 13, 14, 15, 16, and 17 run consecutively to the sentences imposed as to Counts 2, 8, 9, 10, 11, and 12 in order to produce a combined sentence equal to the total punishment of 324 months. The sentence is consistent with the Sentencing Guidelines and counsel was not ineffective in failing to object to a correct application of the sentencing guidelines.

Petitioner further argues that the sentence violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000).[4] However, "[t]he rule in *Apprendi* only applies where a defendant is sentenced above the statutory maximum sentence for an offense...[it] does not prohibit a sentencing court from imposing consecutive sentences on multiple counts of conviction as long as each is within the applicable statutory maximum." *Id.* Here, each sentence was within the statutory maximum for the respective counts. Therefore, the sentence did not violate *Apprendi*. Accordingly, Petitioner's counsel was not ineffective for failing to object to Petitioner's sentence and Petitioner fails to establish any prejudice as a result of counsel's failure to object to his sentence.

---

[3] *See* 18 U.S.C. § 1956 which provides that the statutory maximum sentence for money laundering or conspiracy to commit money laundering is not more than twenty years.

[4] The rule in *Apprendi* states that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490.

**Ground Four**

In Ground Four, Petitioner essentially asserts that his sentence violates the mandates of *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005). *Blakely* claims are not retroactive, and nothing in *Booker* indicates that *Blakely* claims are retroactive. Further, the Eleventh Circuit Court of Appeals has expressly held that the *Blakely/Booker* rule "falls squarely under the category of new rules of criminal procedure that do not apply retroactively to § 2255 cases on collateral review." *Varela v. United States*, 400 F.3d 864, 868 (11th Cir. 2005). *Accord Schriro v. Summerlin*, 124 S. Ct. 2519, 2526-27 (2004). As a result, Petitioner's claim is without merit.

**Ground Five**

In Ground Five, Petitioner claims that his appellate counsel was ineffective for failing to raise "dead-bang winner" claims on appeal. The issues that Petitioner asserts were "dead-bang winners" are: 1) his sentence should not have been enhanced for abuse of trust; 2) it was plain error to use his conviction on Count Two when calculating his sentence when the jury failed to specify the object of the conspiracy; 3) the sentence was in excess of the statutory maximum; and 4) the Sentencing Guidelines were unconstitutionally applied to him. As discussed, Petitioner's contentions in claims 2, 3, and 4 are without merit. Petitioner does not demonstrate that appellate counsel was objectively unreasonable for failing to raise those issues on appeal nor can Petitioner demonstrate prejudice as a result of counsel's failure to raise those issues on appeal.

*Strickland*'s standards for effective assistance of counsel govern claims of ineffective assistance by appellate counsel. *See Duest v. Singletary*, 967 F.2d 472, 477 n.4 (11th Cir. 1992). To prevail on his claim, Petitioner must show that appellate counsel was objectively unreasonable in

not raising the omitted issue. *Smith v. Robbins*, 528 U.S. 259 (2000). However, appellate counsel who files a merits brief need not raise every nonfrivolous claim. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). The exercise of judgment involved in framing an appeal make it "difficult to demonstrate that (appellate) counsel was incompetent" under *Strickland* for omitting a particular argument. *Smith v. Robbins*, 528 U.S. at 285-86 (citing *Gray v. Greer*, 800 Fd. 644, 646 (7th Circuit 1986)).

      In reviewing counsel's decision to omit an issue on appeal, our "scrutiny ... must be highly deferential." *Id.* at 689. "A fair assessment of attorney performance requires every effort be made 'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1537 (10th Cir. 1994) (quoting *Strickland*, 466 U.S. at 689). "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

      Strickland's performance and prejudice prongs "partially overlap when evaluating the performance of appellate counsel." *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). The Sixth Amendment does not require an attorney to raise every nonfrivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751, 77 L. Ed. 2d 987, 103 S. Ct. 3308 (1983). Consequently, appellate counsel engage in a process of "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536, 91 L. Ed. 2d 434, 106 S. Ct. 2661 (1985) (quoting *Jones*, 463 U.S. at 751-52). The weeding out of weak claims to be raised on appeal "is the hallmark of effective advocacy," *Tapia v. Tansy*, 926 F.2d 1554, 1564 (10th Cir. 1991), *cert. denied*, 112 S. Ct. 115, 116 L. Ed. 2d 84 (1991), because "every weak issue in an appellate brief or argument detracts from the attention a judge can devote to the stronger issues, and reduces appellate counsel's credibility before the court." *Miller*, 882 F.2d at 1434. Consequently, "appellate counsel will ... frequently remain above an objective standard of competence ... and have caused her client no prejudice ... for the same reason--because she declined to raise a weak issue." *Id.*; *see also McBride v. Sharpe*, 25 F.3d 962, 973 (11th Cir. 1994) (counsel's actions were not deficient in part because counsel omitted a weak issue to avoid "cluttering the brief with weak arguments"), *cert. denied*, 115 S. Ct. 489 (1994); *Bond v. United States*, 1 F.3d 631, 635 n.2 (7th Cir. 1993) ("Counsel's strategy decisions--including the decision not to pursue a plethora of issues on appeal--ordinarily do not violate the Sixth Amendment's guarantee of effective assistance of counsel.").

      Conversely, an appellate advocate may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," even though counsel may have presented strong but unsuccessful claims on appeal. *Page v. United States*, 884 F.2d 300, 302 (7th Cir. 1989). Although courts have not defined the term "dead-bang

winner," we conclude it is an issue which was obvious from the trial record, *see, e.g., Matire v. Wainwright*, 811 F.2d 1430, 1438 (11th Cir. 1987) (counsel's failure to raise issue which "was obvious on the record, and must have leaped out upon even a casual reading of [the] transcript" was deficient performance), and one which would have resulted in a reversal on appeal. By omitting an issue under these circumstances, counsel's performance is objectively unreasonable because the omitted issue is obvious from the trial record. Additionally, the omission prejudices the defendant because had counsel raised the issue, the defendant would have obtained a reversal on appeal.

*United States v. Cook*, 45 F.3d 388, 395 (10th Cir. 1995).

Petitioner contends that his appellate counsel was ineffective for failing to argue on appeal that his sentence was erroneously enhanced for abuse of position of trust. Petitioner argues:

> [his] sentence should not have been enhanced for abuse of trust for the reasons presented before the sentencing court and those given by the Eleventh Circuit in his co-defendant HAYWOOD HALL's case, see, United States v. Hall, 349 F.3d 1320 (11th Cir. 2003), cert. granted, affirmed at 543 U.S. ___ (decided January 11, 2005)[.]

(Dkt. 2 at 17)(emphasis in original).

In assessing counsel's effectiveness on appeal, the Court initially must "eliminate the distorting effects of hindsight...and evaluate the conduct from counsel's perspective at the time." *Dever*, 36 F.3d at 1537. At the time of Petitioner's appeal, counsel did not have the benefit of the opinion in *Hall*. Therefore, merely because Petitioner's co-defendant, Hall, prevailed on appeal on the "abuse of trust" issue does not render Petitioner's counsel's performance ineffective.

Moreover, the evidence at trial distinguished Petitioner's role with the church and Hall's role as pastor during the "road shows." The evidence at trial established that Petitioner was the head of the Greater Ministries church, its board of elders, and controlled the church, including its finances. (CR Dkt. 733 at 24, 31-32). Petitioner was intimately involved in promoting the Faith Promises Program, used by the defendants collectively to generate contributions to perpetuate the scheme

charged in the Indictment. From the evidence, as this Court found at sentencing, as pastor, Petitioner occupied a position of trust with respect to the church, its congregants and the investors. The scheme was operated out of the church headquarters under Petitioner's directive. Many of those investors attended the church or counseled with Petitioner concerning the spiritual basis for the Faith Promises Program. Unlike Hall, who served as pastor on the road during the evangelical "road shows," Petitioner served in that capacity at church headquarters. Several church members testified during trial. While some disclaimed being victimized, it was apparent and this Court so found that Petitioner's pastoral role played a significant part in the successful promotion of the religious based scheme, premised on biblical passages.[5]

U.S.S.G. § 3B1.3 provides:

### Abuse of Position of Trust or Use of Special Skill

If the defendant abused a position of public or private trust, or used

---

[5] Joseph Edwards testified that he was a member of the Greater Ministries church, and joined the Faith Promises Program, not to invest his money and make a profit, but because "he saw what the church was doing for people." He "gave a donation to the church so it could go forward to help others." (CR Dkt. 733 at 31). He understood the goal of the Faith Promises Program was "to help people." (Id. at 32). He didn't expect to get anything back from participating in the Faith Promises Program (CR Dkt. 734 at 37-38). He testified that he never saw any of the elders or directors not acting as good stewards with God's money. (Id. At 32). He attested that he knew Petitioner "since [he] was a little child...[p]robably around the ages of 11 and 12...[and that Petitioner was] more or less an uncle to [him]." (CR Dkt. 734 at 12; 51).

Abner Smucker testified that he became involved with Greater Ministries "as a servant." (CR Dkt. 732 at 175). He became involved in the Faith Promises Program and understood the program as "giving to a church[.]" (Id. at 176). When he gave money to the program, he did not expect any money in return as he "gave it as unto the Lord[.]" (Id.). His desire was that the money he put into the program would be used towards the good works Greater Ministries was doing (Id. at 210-11).

David Wine, himself a pastor, testified that he got involved in the Faith Promises Program through his church and its missionary program because he thought the program was "very spiritual" and he wanted to pool resources and draw from those resources to use for missionary work (CR Dkt. 838 at 60-64). He also testified that he gave to the Faith Promises Program because he felt "it was about giving." (Id. at 112).

James Fraterrigo testified that he attended Greater Ministries church services, regularly attended prayer meetings there, and that different people, including Petitioner, would talk and pray at those events, and that Petitioner would discuss the Bible and Jesus (Id. at 143-47). He also attested that he told Don Hall that he thought "a lot of this church, I like what it stands for, I like what it's doing" and that he "would love to be an elder of this church or be more involved in this church." (Id. at 174). He gifted to the Faith Promises Program and believed the money he was giving was supporting good works (Id. at 179).

> a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic. If this adjustment is based upon an abuse of a position of trust, it may be employed in addition to an adjustment under §3B1.1 (Aggravating Role); if this adjustment is based solely on the use of a special skill, it may not be employed in addition to an adjustment under §3B1.1 (Aggravating Role).

At sentencing, this Court found that Petitioner occupied a position of trust in the church and abused that position. Therefore, Petitioner's offense level was enhanced 2 points pursuant to § 3B1.3 (CR Dkt. 872 at 19-23).

In order to increase an offense level for abuse of a position of trust, two elements must be established: "(1) that the defendant occupied a position of public or private trust; and (2) that the defendant abused that position in a significant way to facilitate the commission or concealment of the offense." *United States v. Hall*, 349 F.3d 1320, 1324 (11th Cir. 2003)(citing *United States v. Garrison*, 133 F.3d 831, 837 (11th Cir. 1998)). "Within the context of fraud, [the Eleventh Circuit] has found a position of trust to exist in two instances: '(1) where the defendant steals from his employer, using his position in the company to facilitate the offense, and (2) where a fiduciary or personal trust relationship exists with other entities, and the defendant takes advantage of the relationship to perpetrate or conceal the offense.'" *Id.* (quoting *Garrison*, 133 F.3d at 837-38). A defendant's "status as a pastor does not necessarily create a personal trust relationship between himself and the victims." *Id.*

As discussed, the evidence at trial established that Petitioner, unlike Hall, enjoyed a pastoral relationship with members or attendees of the church, including investors such as Joseph Edwards, Abner Smucker, David Wine, and James Fraterrigo. Petitioner unquestionably held a position of trust in the church and used that position to facilitate his crimes. Petitioner was the head of the

church, controlled the church's bank accounts, lead church services and prayer meetings attended by some of the victims, and used his position as pastor to fraudulently convince victims that the Faith Services Program was about Biblical giving and that the investments were going to charity, when in fact only about one percent of the money went to charitable purposes (CR Dkt. 834 at 160). *See United States v. Lilly*, 37 F. 3d 1222, 1227 (7th Cir. 1994)("Because Pastor Lilly was the Church's pastor and spiritual leader, his congregation undoubtedly trusted him to further the Church's religious mission.").

Trial counsel unsuccessfully challenged application of the abuse of trust enhancement at sentencing. Considering the evidentiary basis for applying the enhancement, and Petitioner's undisputed pastoral role with Greater Ministries, it was not obvious from the trial record that the issue had merit on appeal. Considering Petitioner's involvement with and pastoral influence over the investors who attended the church or sought his spiritual guidance before investing, appellate counsel cannot be faulted for not having anticipated a successful challenge by co-defendant Hall, whose role in the scheme was markedly different. Even if there is some arguable merit to Petitioner's contention that the sentencing enhancement for abuse of trust was error, considering the evidence at trial and this Court's findings at sentencing, that issue cannot be accurately characterized as a "dead-bang winner," as it was not obvious from the trial record. Accordingly, under the circumstances, appellate counsel was not objectively unreasonable for not raising the issue on appeal and Petitioner cannot show prejudice even if counsel's performance was deficient.

**Ground Six**

In Ground Six, Petitioner argues that his counsel was ineffective for failing to object to the Court's restitution order which he claims is illegal because it requires Petitioner to pay restitution in an amount allegedly greater than the actual losses suffered by the victims. Petitioner argues that

the Court ordered him to pay restitution in the amount of $85 million when the victims' losses amounted to only $50 million.

A § 2255 motion cannot be used by a federal prisoner challenging the restitution portion of his or her sentence, because § 2255 applies only to claiming the right to be released from custody. *Blaik v. United States*, 161 F.3d 1341, 1343 (11th Cir. 1998). Therefore, Petitioner may not challenge the restitution order under § 2255.

### Evidentiary Hearing

There is no need for an evidentiary hearing as it "plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief." *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2002).

ACCORDINGLY, the Court **ORDERS** that:

1. Petitioner's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CV Dkt. 2) is **DENIED**. Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CV Dkt. 1) is denied as moot.

2. The **Clerk** is directed to enter judgment against Petitioner, terminate any pending motions, and close this case.

**DONE AND ORDERED** in Tampa, Florida on this 27th day of March, 2008.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Petitioner
Counsel of Record